***********
The undersigned reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Stanback with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. At the time of the alleged injury which is the subject of this claim, May 18, 2004, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, the defendant employed three or more employees, and the employer-employee relationship existed between the defendant and plaintiff.
2. Defendant was a duly qualified self-insured employer under the Workers' Compensation Act at all times material to this claim.
3. Plaintiff's average weekly wage is $486.68.
4. All stipulations contained in the parties' pre-hearing agreement, dated December 8, 2005, are incorporated fully into this record, as if fully set forth herein.
5. Documents admitted into evidence include the following:
 a. Stipulated Exhibit #1 — (marked as Plaintiff's and Defendants' Exhibits) — Industrial Commission Forms, Report of Injury, Attendance Calendar, Payroll Records, Attendance records, Medical Department records and brochure, Plaintiff's Medical Records, Discovery Responses
 b. Defendants' Exhibit #7 — Six (6) photographs of the Autoset machine ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 26 years old. She was initially employed by defendant at its Eden rug manufacturing plant beginning in 2000 as a utility operator. In May 2004, plaintiff was working as an auto set machine operator. An auto set machine transfers yarn onto spools. The auto set machine operators' duties include *Page 3 
creeling, threading the machine, keeping the machine running, and maintaining a clean area around the machine. Most of plaintiff's time as an operator was spent operating the winding unit. Plaintiff worked the second shift from 3:00 p.m. to 11:00 p.m. These employees are compensated with incentives for production.
2. Plaintiff occasionally experienced low back pain before May 18, 2004. For example, she was complaining of low back pain with radiation into the left hip when she was seen by her primary care physician, Dr. Michele DiLauro, on March 16, 2004. At that time, Dr. DiLauro did not note any signs which made her suspicious of a herniated disc. She diagnosed plaintiff with piriformis muscle syndrome, or buttocks muscle spasms or cramping.
3. On May 18, 2004, plaintiff was assigned to run an auto set machine. The yarn plaintiff was processing on her machine was tangling or knotting up with "rat nests." The number of "rat nests" plaintiff encountered during her shift on May 18, 2004 was not typical and created much more work for plaintiff when operating the winder unit. Plaintiff was required to untangle these knots while operating the winder unit. When the knotted yarn was in the middle of the unit, plaintiff bent over the winding unit, at almost a 90-degree angle, with both arms outstretched and used both her hands to untangle the yarn. Sometimes this was accomplished quickly and other times plaintiff would take up to a minute to untangle the yarn.
4. During the first six hours of her shift on May 18, 2004, plaintiff estimated she bent over her winding unit repeatedly on 150 to 170 occasions to untangle the knotted yarn. Plaintiff developed low back and left hip pain as she performed her work, which she was not experiencing when she reported to work on May 18, 2004. As a result of the low back and hip pain, plaintiff left her job after working six hours of her normal eight-hour shift. *Page 4 
5. Before she left work on May 18, 2004, plaintiff mentioned to her supervisor, Mildred Long, that her back was hurting. Plaintiff did not report this to Ms. Long as an injury because she thought her back was simply sore as had occurred while performing this work in the past.
6. Plaintiff continued to have pain in her low back and hip when she reported to work on May 19, 2004. Consequently, plaintiff was given permission by her supervisor, Ms. Long, to see the plant nurse, Carolyn Land, prior to beginning her shift. Plaintiff told Ms. Land that she was having low back pain which had started the night before during her shift. Plaintiff did not tell Ms. Land specifically that she had injured her back the previous night because plaintiff did not appreciate that an injury had occurred. Ms. Land recorded in the medical department record that plaintiff was seen and was complaining of pain in the left "lower lumbar area" and "no known injury." Biofreeze and a heat compress were applied to plaintiff's low back, plaintiff was given medication, and "instructions on back care given." Plaintiff was to return as needed. Plaintiff also briefly saw Ms. Land the next day and was again given medication. Plaintiff told Ms. Land that she would talk with her personal physician concerning the back pain at her next appointment.
7. Plaintiff was first examined by her primary care physician, Dr. DiLauro, on June 3, 2004 for the low back and hip pain which began on May 18, 2004. Dr. DiLauro noted that plaintiff "tends to work leaning over a rather high table in somewhat of an awkward position." Dr. DiLauro's assessment was "Piriformis syndrome." Plaintiff underwent acupuncture. Dr. DiLauro commented, "discussed with patient her recurrent Piriformis syndrome is most likely due to something she is doing posturally at work. Discussed with her she needs to discontinue leaning over the table at work and either stand on a box or walk around the table instead of reaching over it." *Page 5 
8. Plaintiff continued to have low back and left leg pain after June 3, 2004. The pain went down her left leg, and there was tingling in her left foot. Plaintiff described this pain as different from the pain she had experienced occasionally before May 18, 2004. The previous pain felt like a sore muscle while the pain after May 18, 2004 was a "stabbing" pain which started in the lower back and ran into the left hip and down the left leg.
9. On October 12, 2004, plaintiff fell down stairs at her home and landed on her buttocks. She experienced pain in her buttocks, and it hurt her to sit. Plaintiff reported to work on October 12, 2004, but left after four hours to go to the emergency room. X-rays showed a fracture of the coccyx. Plaintiff was given medication and told to see her primary care physician. Plaintiff continued to work.
10. Plaintiff was seen by Dr. Lawrence Fusco at Belmont Medical Associates on October 18, 2004 for follow up for her coccyx fracture. Plaintiff saw Dr. Fusco because Dr. DiLauro had moved out of state. Dr. Fusco prescribed medication for plaintiff.
11. Plaintiff followed-up with Dr. Fusco on November 23, 2004. Dr. Fusco ordered an MRI of the lumbar spine because of plaintiff's continued complaints of low back, left hip and left leg pain. The MRI was performed on November 24, 2004 and revealed a lateral disc herniation at L5-S1.
12. Dr. Fusco referred plaintiff to a neurosurgeon at Guilford Neurosurgical Associates to address her low back and leg complaints. Dr. Mark Roy, a neurosurgeon at Guilford Neurosurgical Associates, saw plaintiff on April 6, 2005. Dr. Roy's office note recorded that "about a year before plaintiff had pain in her low back and tingling into her left hip, and some down her left leg." Dr. Roy's impression was left SI radiculopathy secondary to herniated disc. He recommended a series of epidural steroid injections. Dr. Roy testified that he did not question *Page 6 
plaintiff closely at this visit regarding how her back pain started but noted that plaintiff told him that the pain began when she was bending at work.
13. Plaintiff received an epidural steroid injection on May 11, 2005. On May 18, 2005, she returned to see Dr. Roy and reported that the injection did not help much. Dr. Roy recommended one additional injection to see if this helped. Plaintiff did not wish to consider surgery. Plaintiff underwent the second epidural steroid injection on May 27, 2005. Plaintiff was unable to work on May 11, 2005 and May 27, 2005, the days the epidural steroid injections were administered.
14. On May 18, 2005, when plaintiff saw Dr. Roy, he asked her detailed questions concerning the circumstances of her injury. His office note for this date states that "This back pain started a year ago this month when she was bending over a machine. It seems likely therefore that was the proximal cause of her ruptured disc." This was the first occasion a doctor told plaintiff that her work on May 18, 2004, bending repeatedly to untangle the yarn, had probably caused her lumbar disc condition.
15. After her May 18, 2005 appointment with Dr. Roy, plaintiff went to talk with defendant-employer's plant nurse, Ms. Land. Plaintiff told her what Dr. Roy had said and reminded her that she had reported her injury to Ms. Land on May 19, 2004. Ms. Land located the record of plaintiff's May 19, 2004 medical department visit. Ms. Land then told plaintiff, in substance, that no formal accident report had been completed in May 2004 and that the back condition had not been characterized or reported as an injury. Plaintiff then discussed her injury with defendant-employer's plant safety specialist and a formal injury report was completed. On July 11, 2005, the administrator of defendant-employer's workers' compensation program completed a formal denial of plaintiff's claim. *Page 7 
16. Plaintiff was seen by Dr. Roy on February 20, 2006 and on June 7, 2006. Plaintiff was still experiencing low back and left lower extremity pain; however, Dr. Roy stated that plaintiff is "at a stable state. She's probably as good as she's going to get." He stated that plaintiff is at maximum medical improvement and retains a ten percent (10%) permanent partial impairment of the back as a result of her lumbar spine injury.
17. Dr. Roy opined, and the Full Commission finds that bending repeatedly over her winding unit during the first six hours of her shift on May 18, 2004 caused or at least was a significant contributor to plaintiff's L5-S1 lumbar disc rupture and the subsequent S1 radiculopathy for which she was being treated.
18. Based on review of the evidence as a whole, the Full Commission finds that on May 18, 2004, plaintiff sustained an injury by accident to her lumbar spine arising out of and in the course of her employment with defendant-employer, when she experienced low back and left hip pain as she repeatedly bent over the winding unit during six hours of her shift, at almost a 90-degree angle, to untangle the knotted yarn. This activity, occurring in a cognizable period of time, constituted a specific traumatic incident of the work assigned plaintiff and caused a disabling injury to her back. The repeated bending over the winding unit caused or at least contributed significantly to the development of the herniated disc at L5-S1 and secondary S1 radiculopathy.
19. As a result of plaintiff's May 18, 2004 back injury, plaintiff was unable to work or earn wages in any employment on May 11, 2005 and May 27, 2005. Though plaintiff missed a couple of hours from work on some days from June 6, 2004 until April 6, 2005 because of her low back and left leg pain, she is not seeking compensation for this time missed from work as she is unable to identify the specific days. *Page 8 
20. Plaintiff's May 18, 2004 back injury attained maximum medical improvement by June 7, 2006. Plaintiff retains a ten percent (10%) permanent partial impairment of the back as a result of her May 18, 2004 injury by accident.
21. The treatment by Dr. Roy, the procedures ordered by Dr. Roy, and the MRI ordered by Dr. Lawrence Fusco were reasonable and necessary for relief from the radiculopathy due to plaintiff's L5-S1 herniated disc.
22. Plaintiff's claim is not barred by her failure to give written notice to the defendant as required by N.C. Gen. Stat. § 97-22. Plaintiff had reasonable excuse for not providing written notice to the defendant of her injury on May 18, 2004, since (1) defendants had actual notice of the injury when plaintiff informed the medical department nurse on May 19, 2004 that her back pain had begun the previous night during her shift and (2) plaintiff reported to defendant-employer's medical department and safety specialist her injury as soon as she was informed by Dr. Mark Roy that her bending on May 18, 2004 over the winding unit had caused a disc herniation. It was not until May 18, 2005 that plaintiff knew the nature and seriousness of her injury. Defendants were not prejudiced by the delay in plaintiff providing formal notice or formally pursuing her claim.
23. As the insurer brought this appeal, the Full Commission finds the award of attorney's fees and costs pursuant to N.C. Gen. Stat. § 97-88
to be reasonable.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW *Page 9 
1. In order to establish a compensable injury to the back, the plaintiff must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an accident or specific traumatic incident of the work assigned. N.C. Gen. Stat. § 972(6); Richards v. Town of Valdese, 92 N.C. App. 222,374 S.E.2d 116 (1988), disc. review denied, 324 N.C. 337 (1989). Under the specific traumatic incident theory, plaintiff must prove that the injury occurred at a judicially cognizable time, although not necessarily at a specific hour or day. Fish v. Steelcase, Inc., 116 N.C. App. 703,449 S.E.2d 233 (1994), cert. denied, 339 N.C. 737, 454 S.E.2d 650 (1995). In this case, the greater weight of the evidence shows that on May 18, 2004, plaintiff sustained an injury by accident to her lumbar spine, a herniated disc at L5-S1, arising out of and in the course of her employment with defendant-employer in the form of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. As a result of her injury on May 18, 2004, plaintiff is entitled to compensation for temporary total disability at the rate of $324.47 per week for 2/7 weeks. N.C. Gen. Stat. § 97-29. The seven-day waiting period does not apply because plaintiff is also entitled to compensation for an additional thirty (30) weeks for permanent partial disability as provided hereafter. N.C. Gen. Stat. § 97-28.
3. Plaintiff is entitled to compensation at the rate of $324.47 per week beginning June 7, 2006 for 30 weeks for the ten percent (10%) permanent partial disability of the back she sustained as a result of her May 18, 2004 injury by accident. N.C. Gen. Stat. § 97-31(23).
4. Plaintiff is entitled to have defendants provide all medical compensation arising from her May 18, 2004 injury by accident, including, but not limited to, payment for the services by Dr. Mark Roy. N.C. Gen. Stat. §§ 97-2(19); 97-25.
5. Plaintiff's claim to compensation is not barred by a failure to comply with N.C. Gen. Stat. § 97-22.
6. Section 97-88 of the N.C. General Statutes provides in pertinent part: *Page 10 
 If the Industrial Commission at a hearing on review . . . shall find that such hearing or proceedings were brought by the insurer and the Commission . . . by its decision orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses, to the injured employee, the Commission . . . may further order that the cost to the injured employee of such hearing or proceedings including therein reasonable attorney's fee to be determined by the Commission shall be paid by the insurer as a part of the bill of costs.
See Id. As the insurer brought this appeal, the Full Commission finds the award of attorney's fees and costs pursuant to N.C. Gen. Stat. § 97-88 to be reasonable.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation for temporary total disability at the rate of $324.47 per week for 2/7 weeks. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay plaintiff compensation for permanent partial disability at the rate of $324.47 per week beginning June 7, 2006, for 30 weeks for ten percent (10%) permanent partial disability of the back. The compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her injury by accident, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability. *Page 11 
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded in Paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel. This fee shall be deducted from the compensation awarded to plaintiff and paid directly to plaintiff's counsel.
5. The plaintiff shall provide the Commission with an affidavit and itemized statement of hours spent in the defense of this appeal before the Full Commission. The Commission, by separate Order, will thereafter provide for fees and costs pursuant to N.C. Gen. Stat. § 97-88.
6. Defendants shall pay the costs.
This the 22nd day of January, 2008.
 S/______________________
 DANNY LEE MCDONALD
 COMMISSIONER
CONCURRING:
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER
 *Page 1